# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

SHERYL GRANT,                              )        CASE NO. 5:23-cv-1693
                                           )
                                           )
              PLAINTIFF,                    )        CHIEF JUDGE SARA LIOI
                                           )
vs.                                        )
                                           )        **MEMORANDUM OPINION AND**
                                           )        **ORDER**
TODD B. HUNTER,                            )
ACTING SECRETARY, U.S.                     )
DEPARTMENT OF VETERANS AFFAIRS             )
                                           )
              DEFENDANT.                    )

Plaintiff Sheryl Grant ("Grant") alleges that her employer, the Department of Veterans Affairs ("VA"), discriminated against and harassed her based on her race, disabilities, and prior Equal Employment Opportunities ("EEO") activity. Grant sued the Acting Secretary of the VA, asserting causes of action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701, *et. seq.* (*See generally* Doc. No. 1.)

Before the Court is the VA's motion for summary judgment. (Doc. No. 27 (Motion); Doc. No. 27-1 (Memorandum in Support).) Grant opposed the motion (Doc. No. 29-1), and the VA replied. (Doc. No. 30.) For the reasons set forth below, the VA's motion is **GRANTED**.

## I.    PRELIMINARY STATEMENT

Despite having a twice-extended discovery period (*see* Order [non-document], 7/12/2024; Order [non-document], 8/23/2024), Grant submits and cites to only a single piece of evidence in opposing summary judgment. Specifically, Grant relies exclusively on her own pre-suit

declaration, signed May 15, 2020, in which she responded to the Equal Employment Opportunity Commission's ("EEOC") questions about her claims and provided "rebuttals" to other persons' declarations regarding the same. (*See generally* Doc. No. 29-2.)

Under Federal Rule of Civil Procedure 56(c)(4), a declaration offered in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." "In order for inferences, thoughts, and opinions to be properly included in a Rule 56 [declaration], they must be premised on firsthand observations or personal experience, and established by specific facts." *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio 2007) (citing, among authority, *Harrah's Ent., Inc. v. Ace Am. Ins.*, 100 F. App'x 387, 394 (6th Cir. 2004)). A declaration "that does not satisfy these requirements . . . will not be considered by the Court in ruling upon a motion for summary judgment." *Id.* (citation omitted).

While "courts may infer personal knowledge from the content and context" of a declaration, it is the burden of the party submitting the declaration to "show circumstances indicating the [declarant] has based the statement on personal knowledge." *Alexander v. Kellogg USA, Inc.*, 674 F. App'x 496, 499 (6th Cir. 2017) (citations and quotation marks omitted). And "statements based on mere 'information and belief,' . . . are not based on personal knowledge." *Id.* (citation omitted); *Giles*, 241 F.R.D. at 469–70.

Here, Grant's 55-page declaration (which includes her rebuttals) does not claim to be based on personal knowledge. The document indicates only that Grant swore "under penalty of perjury" that her statements therein were "true and complete to the best of [her] knowledge," and that she was required by EEOC rules and regulations to disclose all of her "firsthand knowledge having a bearing on the merits of the complaint." (Doc. No. 29-2, at 1.) But Grant makes no attempt to

explain whether, how, or to what extent the statements in her declaration are based on personal knowledge. "This is especially problematic because," for many of the statements, "there is no basis for merely assuming that [Grant] (or anyone in [Grant's] position) would have personal knowledge of the stated facts." *Sloan-Brown v. Meharry Med. Coll.*, No. 3:20-cv-1108, 2024 WL 1293860, at *2 (M.D. Tenn. Mar. 26, 2024) (disregarding statements in a plaintiff's declaration that were "not supported by any assertions of factual matter").

To be clear, Grant's declaration does contain at least some information that can reasonably be inferred to be within her personal knowledge. The Court assumes, for example, that Grant has personal knowledge of her job duties, her home and work addresses, her supervisors, and the like. *See id.* But those background facts are undisputed and, for the most part, immaterial.

When discussing the facts necessary to prove her claims, Grant's declaration statements consistently fall outside her personal knowledge. While Grant's opposition brief cites exclusively to her own declaration, nearly all the cited-to portions are simply Grant's subjective beliefs, unsupported speculation, or legal conclusions masquerading as facts. Those statements, which are unsupported by any other record evidence, are inadmissible under Rule 56 and will therefore be disregarded. *See Harrah's*, 100 F. App'x at 394 ("'It is well settled that courts should disregard conclusions of law (or 'ultimate fact') found in affidavits' submitted for summary judgment." (citation omitted)); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992) (affirming summary judgment and observing that the plaintiff's affidavit "was not made on personal knowledge" and contained "nothing more than rumors, conclusory allegations and subjective beliefs which are wholly insufficient evidence to establish a claim of discrimination" (collecting cases)).

Additionally, Grant's declaration frequently references extraneous materials, such as internal VA policy documents, emails, medical records, and other unspecified "documentation" of the events giving rise to this lawsuit. But none of those documents are before the Court. The committee notes to Rule 56 makes clear that "[m]aterials that are not yet in the record—including materials referred to in an affidavit or declaration—must be placed in the record." Fed. R. Civ. P. 56 (advisory committee's note 2010). Grant has not done so. Thus, the existence of those documents and Grant's discussion of them is wholly unsupported by the record. Further, Grant has made no attempt to demonstrate that her statements about those documents would be admissible in evidence. Therefore, any references in Grant's declaration to materials that are not on the record will be disregarded for purposes of summary judgment. *See, e.g.*, *Jones v. Wal-Mart Stores E., L.P.*, No. 2:19-cv-2747, 2021 WL 784145, at *6 (W.D. Tenn. Feb. 1, 2021) ("[T]he Court cannot consider material it has not been provided.").

In sum, the Court will consider only the portions of Grant's declaration that could feasibly be within her personal knowledge, or which are otherwise established by specific facts. *See, e.g.*, *Sloan-Brown*, 2024 WL 1293860, at *2 (disregarding portions of affidavit when "there is no indication of how Plaintiff gained personal knowledge of the facts stated"); *Williams v. Mucci Pac, U.S.A., Ltd.*, 961 F. Supp. 2d 835, 839 (E.D. Mich. 2013) (similar).

## II.    FACTUAL BACKGROUND

### A.    Grant and Her Employment

Grant "is an African American female," and suffers from various medical conditions[1] that, for present purposes only, are assumed to qualify as disabilities under the Rehabilitation Act. (Doc.

---

[1] Grant claims the following disabilities: "Sarcoidosis, De Quervain's Disease, Mediastinal Lymphadenopathy, Bilateral Carpel Tunnel, Degeneration of Cervical Intervertebral Disc, other Intervertebral Disc degeneration Lumbosacral Region, Cervical Spondylosis with Myelopathy, other Chronic pain, Thoracic back pain, unspecified siter pain in Thoracic Spine, Radiculopathy of Lumbar Spine, pain in right shoulder, pain in the left shoulder,

4

No. 1 ¶ 11; Doc. No. 27-1, at 16 n.3.)[2] In 2013, Grant was hired by the VA as a Revenue Utilization Review ("RUR") nurse at the Louis Stokes Veterans Administration Medical Center in Cleveland, Ohio. (Doc. No. 27-3, at 8:14–9:9.) Grant has held the same job title since then, although she began working remotely at some point (the record is unclear when). (*Id.* at 8:17–19, 8:23–9:18.) As an RUR nurse, Grant's duties include, among other things, obtaining authorization from insurance companies regarding medical services and procedures, completing discharge reviews for inpatient admissions, and reviewing for "legal torts," meaning she would use her "nursing expertise . . . to provide determinations as [to whether] the care that was rendered related to the legal case." (*Id.* at 9:19–11:20; Doc. No. 29-2, at 5.)

The RUR Nurses are divided into teams. (Doc. No. 27-3, at 15:7–13; Doc. No. 27-4 ¶ 8.) Grant was on Team Five during the relevant time-period of 2018–2020. (Doc. No. 27-3, at 15:7–13; Doc. No. 27-4 ¶ 8.) Grant could not recall at her deposition, nor does the record otherwise indicate, the identity of the other Team Five nurses during that period (Doc. No. 27-3, at 77:21–78:2), how many nurses were on Team Five from 2018–2020 (*id.* at 15:20–16:21), or how the work is divided between team members. (*Id.* at 16:22–17:4.)

## B. Grant's EEO Activity

The record lacks specificity, but it appears that Grant filed at least two EEO complaints against her co-workers prior to the events giving rise to this suit. The first occurred "sometime between November 2017 and January 2018." (Doc. No. 29-1, at 5 (citing Doc. No. 29-2, at 4);

---

Parasthesia of skin, large fiber Neuropathy, Psychophysiological, Insomnia, Hypertension, Hiatal Hernia, GERDS and Keratoconus." (Doc. No. 29-2, at 3; *see also* Doc. No. 27-3, at 62:8–74:7 (discussing her conditions and treatment).)

[2] Both the first and the second paragraphs in Grant's complaint are designated as Paragraph 1. The third paragraph is designated Paragraph 2, and the numbers continue sequentially from there. For clarity, and because the Court has no need to refer to the first Paragraph 1, this order will refer to the paragraph numbers as they are labeled in the complaint, wherein the second paragraph is Paragraph 1, the third is Paragraph 2, and so on.

Doc. No. 1 ¶ 11.) Grant accused her then-peer Mary Kaye Bronsteatter of creating a hostile work environment, which led to an alternative dispute resolution ("ADR") meeting with Bronsteatter. (Doc. No. 27-3, at 85:12–86:12.) No other details are before the Court, except that at some point, the "ADR was completed." (Doc. No. 29-2, at 4; Doc. No. 27-3, at 85:12–87:4.)

And in March 2018, Grant filed an EEO discrimination claim against her then-supervisor Brad Solie. (Doc. No. 1 ¶ 12; Doc. No. 27-7, at 1.) Grant fails to develop the record on this incident as well. A later EEO document, however, submitted by the VA for another purpose, indicates that the complaint was based on Grant's allegation that Solie "sought the opinion of a coworker about an issue before meeting with [her]." (Doc. No. 27-7, at 1.) The EEOC closed the case "on June 29, 2018, upon the issuance of a final Agency Decision." (*Id.*)

### C.    Employment Actions at Issue

Grant claims she suffered several adverse employment actions because of her race, disabilities, and/or her prior EEO activity described above. But, again, she fails to explain her allegations with specificity or to support them with admissible evidence. This alone could warrant summary judgment, given that a plaintiff's "'[c]onclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment.'" *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (quoting *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009)). Nevertheless, the Court briefly recounts the alleged events giving rise to this suit.

### 1.    Leave-Related

Several of the employment actions at issue relate to Grant's requests for time off on or around various holidays. First, Grant claims she requested time off for July 4, 2018. (Doc. No. 29-1, at 5–6.) But there is no documentation of that request, and therefore no indication of whether the request was ultimately granted or denied. (*See, e.g.*, Doc. No. 27-3, at 25:22–26:15.) In fact,

6

the VA's evidence suggests that Grant did not request leave on July 4 at all, but indicates that she received time off on July 3, 5, 6, 9, and 16, 2018. (*See* Doc. No. 27-5, at 1; Doc. No. 29-2, at 49.)

Second, Grant claims she was denied leave for December 31, 2018 (Doc. No. 29-2, at 8), which the VA does not deny. (Doc. No. 27-6, at 2.) Email communications between Grant and her supervisor, Virginia Delisio, indicate that Grant requested leave for December 24, 26, and 31, 2018, and January 1 and 2, 2019. (Doc. No. 27-6, at 1–2.) According to those emails, Delisio approved Grant's requests for December 24 and 26, and January 2, and noted that January 1 was already a holiday, so Grant did not need to request off. (*Id.*) Delisio denied Grant's request for New Year's Eve, however, because another nurse with more seniority had requested off that day. (*Id.* at 1.) Delisio told Grant that "it's important for everyone to have time off during the holidays," but she nevertheless offered to let Grant only work a half-day on New Year's Eve if she wanted. (*Id.*) Grant does not recall, and the record does not indicate, whether she accepted that offer. (Doc. No. 27-3, at 29:17–30:2.)

Third, Grant requested time off for November 12 and 13, 2019. (Doc. No. 1 ¶¶ 29, 42, 55.) Grant complains that the processing of those requests was delayed by a week. (*Id.* ¶¶ 29, 42, 55.) And although Delisio ultimately approved Grant's request for November 13, she denied Grant's request as to November 12, 2019, the day after Veteran's Day. (*See* Doc. No. 29-2, at 22.) The leave was denied because other nurses with more seniority had requested off. (Doc. No. 27-8, at 1; Doc. No. 27-3, at 37:1–39:10; *see also* Doc. No. 29-2, at 22 ("Virginia Delisio's reason for denying my leave was because there were already 3 nurses off.").)

Grant "felt like [she] was being targeted or punished" when her leave requests were denied or delayed. (Doc. No. 29-2, at 17, 23.) She "felt that [her] job was affected because [she] was constantly on edge, afraid to ask for leave for fear of denial." (*Id.* at 9; *see also id.* at 17, 23

(similar).) Grant claims she "became nervous, anxious, and stressed out whenever [she] requested leave for fear of denial." (*Id.* at 9; *id.* at 17, 23 (similar).) According to Grant, this "excessive stress exacerbated [her] Sarcoidosis," and she "experienced insomnia, headaches, and agitation," her "libido decreased," and she "experienced excessive pain and loss of interest in activities." (*Id.* at 9; *id.* at 17, 23 (similar).)

### 2.  *Non-Leave-Related*

#### a.  *Disability Retirement Application*

Grant also alleges that her supervisor, Delisio, did not timely provide a statement for her disability retirement application. Grant could not recall much about this issue at her deposition either (Doc. No. 27-3, at 41:14–45:18), nor does she offer any admissible evidence on the topic. The VA, however, presents several emails that provide helpful context. On May 21, 2018, Delisio submitted to Lisa Shaw, a human resources representative, "the requested information" regarding Grant's disability retirement application. (Doc. No. 27-11, at 5.) On July 31, 2018, Shaw alerted Delisio that "some questions may have been overlooked," and that further information was needed from Delisio. (*Id.* at 4–5.) Delisio did not respond to Shaw's request, despite Shaw following up on August 13, August 21, September 6, and September 14. (*Id.* at 3–5.) On September 24, Shaw emailed Delisio's supervisor, Steven Furrer, about the incomplete form. (*Id.* at 2.) Furrer responded that he would complete the form. (*Id.* at 1–2.) Furrer explained to Shaw that Delisio was "wearing multiple hats" at that time because she was an Assistant Nurse Manager but was also "filling in" for the then-vacant Nurse Manager position. (*Id.*) Furrer returned the completed form to Shaw on September 27, 2018. (*Id.*)

Grant was asked at her deposition whether she believed the "delay in submitting the supervisor statement caused a delay in [her] submitting [her] retirement application[.]" (Doc. No.

27-3, at 43:22–44:3.) Grant responded that she "won't make that direct correlation. It just delayed the process in general to HR." (*Id.*) That assessment tracks with the VA's evidence, which suggests that Grant had not procured the necessary medical documentation for her application until December 10, 2018. (Doc. No. 27-12, at 1–2.) Thus, the record suggests, and Grant does not dispute, that Grant could not have submitted her application until at least two months after Furrer provided the supervisor statement. (*Id.*)

### b.  Telework Agreement

Grant next alleges that the VA failed to timely process her request for a revised telework agreement. (Doc. No. 1 ¶¶ 19–21, 28, 41, 54.) According to Grant, this delay affected her job because, as with the leave requests, she "experienced excessive stress, insomnia, agitation, anxiety, and [her] Sarcoidosis was exacerbated," her "libido decreased," and she "experienced excessive pain and loss of interest in activities." (Doc. No. 29-2, at 14.) Grant claims that she submitted her request "on or around September 14, 2018," and "received a completed signed copy . . . on or around September 2019" (Doc. No. 29-2, at 12), but the record does not indicate the precise date Grant submitted her request, how many days she was seeking to work remotely, or whether her request was ultimately granted or denied. (*See, e.g.*, Doc. No. 27-3, at 45:19–46:16.) Grant also claims that "Delisio did not comply with the agency's policy and procedures" in handling her telework request. (Doc. No. 29-2, at 12–13.) Again, however, Grant's conclusion relies entirely on her own characterizations of various VA materials that are not in the record and therefore cannot be considered by the Court.

### c.  Internal Investigation

Next, Grant alleges that the VA improperly dismissed her November 2019 complaint against her co-worker, Karen McCallister. Among other things, Grant accused McCallister of

placing an "R" next to some entries on Grant's worklist, which Grant interpreted as McCallister "tracking" Grant's work. (Doc. No. 27-3, at 46:17–47:3; Doc. No. 27-15, at 1.) Furrer assigned a neutral party, Catherine Waterstradt, to conduct a fact-finding investigation into Grant's allegations. (Doc. No. 27-4 ¶ 17.) After reviewing the emails provided by the relevant parties and interviewing Grant, McCallister, and their supervisor (who was Bronsteatter at that time), Waterstradt provided a written report of the incident to Furrer. (Doc. No. 27-15, at 5–26.) Upon review of Waterstradt's report, Furrer concluded there was "[n]o action to be taken" because the "report shows no evidence of a hostile work environment between Ms. McCallister and Ms. Grant." (*Id.* at 4 (finding that "[a]ll correspondence submitted in conjunction with the fact-finding is professional, appropriate for the circumstance, and demonstrates attempts to work together").)

Grant was not disciplined for the alleged marks next to her entries. (Doc. No. 27-3, at 52:1–8.) Indeed, Grant admits that "[n]othing happens," and "[t]here's no result" of having an "R" on your worklist. (*Id.* at 49:25–50:9.) Grant's sole issue regarding this incident is that she believes "the involvement of a subject matter expert would have helped [the investigation] tremendously." (Doc. No. 27-3, at 51:1–6, 52:19–53:9.) But there is no evidence that Grant ever requested a subject matter expert, or that the VA generally consults subject matter experts in similar circumstances.

### d.  Quality Review

Finally, Grant alleges that she endured an "untimely quality review." (Doc. No. 1 ¶¶ 32, 45, 58.) Again, Grant could not recall the details of this incident at her deposition, but the VA's evidence provides some color. (Doc. No. 27-3, at 54:14–57:3.) The quality review that Grant complains of, which is separate from the annual proficiency review, is typically performed twice per year. (Doc. No. 27-4 ¶ 9.) Because of technical issues, however, the quality review was not conducted until mid-January 2020. (*Id.* ¶¶ 11–12.) The record is unclear when the last quality

10

review before January 2020 was conducted. In any event, once the system was up and running, Grant's then-supervisor Bronsteatter "conducted Quality Reviews on all RUR Nurses that the system identified as on Team One and Team Five, except one nurse who was on medical leave at the time." (*Id.* ¶ 12.) Grant contends this quality review was harassment aimed at her "[b]ecause of the close proximity, I believed, you know, at the time my proficiency was due." (Doc. No. 27-3, at 57:4–11.) In other words, Grant asserts that she was being harassed by being subjected to two performance reviews in close temporal proximity to each other. (*See id.*)

Grant claims the quality review "caused [her] to be very anxious and nervous," because she "felt like [she] was being targeted or punished." (Doc. No. 29-2, at 34.) As to how this review impacted her, Grant again cites "issues with Insomnia and Sarcoidosis exacerbations," "headaches and irregular menstrual cycles," decreased libido, and "excessive pain and loss of interest in activities." (*Id.*) Grant claims the review also affected her job because she "missed two items on the Quality Review," which she "worried . . . would impact" her annual proficiency results. (*Id.*) The VA's unrebutted evidence shows, however, that "Grant's Quality Review in January 2020 did not negatively impact her annual nursing proficiency." (Doc. No. 27-4 ¶ 13.) In fact, "Grant received a rating of 'High Satisfactory' on her 2020 nursing proficiency," which "is the second highest rating available." (*Id.* ¶ 15.)

## III.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a "party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought," and that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Alternatively, summary judgment is denied if

11

"there are 'any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the record—including pleadings, depositions, written discovery responses, and affidavits—that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Fed. R. Civ. P. 56(a), (c). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Anderson*, 477 U.S. at 248–49. It also insufficient for a plaintiff to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Rather, the nonmoving party must "go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *Dean-Lis v. McHugh*, 598 F. App'x 412, 415 (6th Cir. 2015).

In ruling on a motion for summary judgment, it is not the judge's function to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255; *Matsushita*, 475 U.S. at 587–88. But the "mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably

12

find for the plaintiff." *Id.* The inquiry, then, is "whether reasonable jurors could find by a preponderance of the evidence" that the nonmoving party is entitled to a verdict. *Id.*

## IV.    DISCUSSION

### A.    Discrimination (Race- and Disability-Related)

Grant asserts two discrimination claims: disability discrimination under the Rehabilitation Act (Doc. No. 1 ¶¶ 52–59, 64), and race discrimination under Title VII. (*Id.* ¶¶ 26–33, 38.) Where, as here, there is no direct evidence of discrimination, the familiar *McDonnell Douglas*[3] framework applies. *Jones v. Potter*, 488 F.3d 397, 403–04 (6th Cir. 2007) (addressing applicability of *McDonnell Douglas* to discrimination claims under the Rehabilitation Act); *Mitchell*, 964 F.2d at 582 (same for Title VII). *McDonnell Douglas* establishes a three-step burden-shifting framework for analyzing employment discrimination claims. *Jones*, 488 F.3d at 403–04. First, the plaintiff must establish a *prima facie* case. *Id.* at 404. If the plaintiff does so, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* Finally, if the defendant carries this burden, the plaintiff must then show by a preponderance of the evidence that the reasons offered by the defendant were pretext for discrimination. *Id.*

To establish a *prima facie* case of disability discrimination under the Rehabilitation Act, Grant must show (1) that she is disabled, (2) that she is otherwise qualified for the job with or without reasonable accommodation, (3) that she suffered an adverse employment action, (4) that the VA knew or had reason to know of her disabilities, and (5) that, following the adverse employment action, either she was replaced by a nondisabled person or her position remained open. *Id.* The fifth element may be satisfied, as Grant attempts to do here, by showing that similarly situated non-protected employees were treated more favorably. *Id.* Similarly, to establish a *prima*

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

*facie* case of race discrimination under Title VII, Grant must establish that (1) she is a member of a protected group, (2) she was subjected to an adverse employment action, (3) she was qualified for the position, and (4) similarly situated non-protected employees were treated more favorably. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016).

The VA does not dispute that Grant is disabled and Black, that it was aware of her protected status, or that Grant is qualified for her job with or without accommodation. (Doc. No. 27-1, at 16.) The VA argues, however, that Grant has not established that she suffered an adverse employment action or that she was treated less favorably than similarly situated non-protected employees. (*Id.*) The Court agrees.

### 1. Adverse Employment Action

As discussed above, Grant alleges the following were adverse employment actions:

- the VA denied her request for time off on November 12, 2019[4] (Doc. No. 1 ¶¶ 30, 43, 56; Doc. No. 29-1, at 5–6);

- the VA "delayed the processing" of Grant's November 2019 time-off requests by a week (Doc. No. 1 ¶¶ 29, 42, 55; Doc. No. 29-1, at 12);

- the VA "delayed the processing" of Grant's requests for medical disability and telework (*id.* ¶¶ 28, 41, 54; Doc. No. 29-1, at 14);

- the VA investigated Grant's November 2019 allegation of workplace harassment without retaining a subject matter expert (*id.* ¶¶ 31, 44, 57; Doc. No. 29-1, at 7); and

- the VA conducted an "untimely quality review" (*id.* ¶¶ 32, 45, 58; Doc. No. 29-1, at 7, 10).

In disputing whether the above qualify as adverse employment actions, both parties veer astray in their briefing. The VA makes a sound factual argument but relies on outdated law, and

---

[4] The VA argues, and Grant does not dispute, that "the claims for denied leave in July and December 2018 may be considered only as part of [Grant's] harassment claim[s]," because she "failed to exhaust her administrative remedies for these claims as discrete acts" by failing "to comply with regulatory time limits." (Doc. No. 27-1, at 7 n.2 (citing Doc. No. 27-7).) The Court agrees, but notes that not considering those dates does not affect the outcome.

Grant correctly states the applicable standard but falls far short in satisfying it. The Court begins with the former. Citing *Allen v. Mich. Dep't of Corrs.*, 165 F.3d 405, 410 (6th Cir. 1999), the VA asserts that to show an adverse employment action, a plaintiff "must demonstrate the existence of a 'materially adverse change in the terms or conditions of employment because of the employer's actions.'" (Doc. No. 27-1, at 17 (citation omitted).) The VA then argues that "[n]one of Grant's allegations rise to the level of materiality required under the test," because she "was not disciplined or demoted, did not suffer a loss of wages, salary, or benefits, and was not terminated." (*Id.* at 18 (record citations omitted).)

As Grant points out, however, the United States Supreme Court recently rejected the materiality test in *Muldrow v. City of St. Louis*, 601 U.S. 346, 144 S. Ct. 967, 218 L. Ed. 2d 322 (2024). In *Muldrow*, the Supreme Court "abrogated circuit court cases across the country that required plaintiffs to show a high level of harm," clarifying that "the harm does not have to be 'significant' or 'serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar.'" *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 900 (6th Cir. 2024) (quoting *Muldrow*, 601 U.S. at 355). Even so, *Muldrow* specifically held that the statutory reference to terms or conditions of employment continues to "circumscribe[] the injuries that can give rise to . . . a Title VII discrimination claim." 601 U.S. at 354. Thus, under *Muldrow*, a plaintiff must show at least "some harm respecting an identifiable term or condition of employment." *Id.* at 355; *see also Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 787 (6th Cir. 2024) (acknowledging *Muldrow*'s abrogation of the materiality test), *reh'g denied*, No. 23-1462, 2024 WL 3205990 (6th Cir. June 17, 2024).[5]

---

[5] While the Sixth Circuit has yet to specifically opine on the question, the Court will assume, without deciding, that *Muldrow*'s "some harm" standard for adverse actions would apply with equal force to claims brought under the Rehabilitation Act. This assumption does not impact the outcome of this case. As discussed below, Grant fails to satisfy the more-lenient *Muldrow* test, and she therefore also fails to satisfy the stricter materiality test.

Turning to the merits, Grant claims her allegations "comfortably meet the post-*Muldrow* standard" (Doc. No. 29-1, at 11), but she does nothing to demonstrate whether or how the employment actions at issue "brought about some 'disadvantageous' change" in an "identifiable term or condition of [her] employment." *Muldrow*, 601 U.S. at 354–55 (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)). Nor is the conduct complained of facially detrimental to the terms and conditions of Grant's employment, as was the case in *Muldrow*, where the plaintiff faced an involuntary transfer that "chang[ed] nothing less than the what, where, and when" of her job. 601 U.S. at 354.

Indeed, whenever Grant was asked how the VA's conduct affected her workplace or her ability to complete her work duties, she cited only increased stress and anxiety, which she claims led to an exacerbation of her conditions. (*See* Doc. No. 27-3, at 35:4–36:3, 40:19–41:7, 45:4–18, 49:25–50:9, 59:17–23; Doc. No. 29-2, at 9, 14, 17, 23, 34.) That is insufficient, as "emotional distress does not plausibly impact the terms and conditions of one's employment." *Credle v. Virginia Cmty. Coll. Sys.*, No. 3:24-cv-233, 2025 WL 27827, at *8 (E.D. Va. Jan. 3, 2025); *Keith v. U.S. Gov't Accountability Off.*, No. 21-cv-2010, 2023 WL 6276635, at *6 (D.D.C. Sept. 26, 2023) (holding that even if an employer's conduct causes "a great deal of frustration and anxiety, that alone does not provide a sufficient foundation" for a discrimination claim, because a plaintiff must "explain how [the challenged conduct] impacted the terms or conditions of her employment"). Grant makes no attempt to connect the effects of the VA's conduct to the terms and conditions of her employment, nor is such a connection self-evident from the record.

Because Grant has presented no evidence that the terms or conditions of her employment were harmed, no reasonable jury could find that Grant suffered an adverse employment action. *See, e.g.*, *Williams v. Memphis Light, Gas & Water*, No. 23-5616, 2024 WL 3427171, at *5 (6th

Cir. July 16, 2024) (affirming summary judgment where the plaintiff failed to "point to a change in an 'identifiable term or condition of employment' that made her 'worse off'" (quoting *Muldrow*, 601 U.S. at 355)); *Stafford v. WB Frozen, US, LLC*, No. 3:23-cv-402, 2025 WL 496466, at \*13 (M.D. Tenn. Feb. 13, 2025) (applying *Muldrow* and granting summary judgment where the plaintiff did not show that the employment action "constituted a disadvantageous change—or, indeed, any change—in any employment term or condition"). Accordingly, Grant fails to state a *prima facie* case of race or disability discrimination, and the VA is entitled to summary judgment on those claims.

### 2. *Favorable Treatment of Similarly Situated Non-Protected Employees*

Even if Grant suffered an adverse employment action, there is no triable issue of fact as to whether similarly situated non-protected employees were treated more favorably than her. As an initial matter, Grant only identifies potential comparators as to the leave-related employment actions. (*See, e.g.*, Doc. No. 29-1, at 11–12; Doc. No. 27-3, at 55:15–19.) That dooms her discrimination claims as to the non-leave-related issues. After all, the "comparator requirement is the be all and end all of the circumstantial-evidence test. If there are no comparators, there is no way to deploy it." *Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672, 683 (6th Cir. 2016). For this independent reason, the VA is entitled to summary judgment on Grant's discrimination claims insofar as they relate to the VA's non-leave-related actions. *Id.*; *see also Carden v. McDonough*, No. 2:19-cv-229, 2022 WL 989221, at \*18 (E.D. Tenn. Mar. 31, 2022) (granting summary judgment where the plaintiff "has not pointed to any similarly situated individuals," and therefore "has not even attempted to establish this element of her *prima facie* case").

And while Grant does identify potential comparators as to her leave requests, she does so only superficially. At her deposition, Grant claimed that five of her fellow nurses—McCallister,

Lloyd, Sutter, Hale, and Ross—were treated more favorably than her regarding leave requests. (*See* Doc. No. 27-3, at 78:16–21 (McCallister), 79:8–15 (Lloyd), 79:21–80:14 (Sutter, Hale, and Ross).) Grant's brief, however, identifies only Ross, Lloyd, and Sutter as potential comparators. (Doc. No. 29-1, at 12.) In any event, Grant presents no evidence that any of those individuals were similarly situated, non-protected, or treated more favorably. The Court addresses each in turn.

### a.  Similarly Situated

At the summary judgment phase, it is Grant's burden to identify a comparator with whom she was "similarly situated 'in all relevant respects.'" *Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 510–11 (6th Cir. 2022) (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (further citation and emphasis omitted). In determining whether comparators are similarly situated, courts in the Sixth Circuit "look to certain factors, such as whether the individuals 'have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Wright*, 455 F.3d at 710 (citations omitted).

Here, Grant does not point to any admissible evidence that McCallister, Lloyd, Sutter, Hale, or Ross was similarly situated to her in *any*, let alone all, relevant aspects of their employment. Grant testified that she "can't recall any detail" as to whether or when those individuals were on Team Five with her (Doc. No. 27-3, at 77:21–78:2), whether or when they had the same supervisor as her (*id.* at 80:15–22), their seniority (*id.* at 25:6–21, 41:4–13), or the dates they requested off that were ostensibly treated more favorably than Grant's requests. (*Id.* at 79:16–20, 93:13–25.) Nor does Grant submit any documentary evidence to fill these informational gaps, despite having the benefit of a full discovery period. This is fatal to her claims, because "[w]ithout such evidence, a fact finder cannot conclude that any of these employees were similarly situated."

*Milczak*, 102 F.4th at 787 (affirming summary judgment where the plaintiff "provide[d] no relevant dimension of comparison for [his purported comparators], such as job title, location, or age" (citing *Mitchell*, 964 F.2d at 584)); *see also Fuelling v. New Vision Med. Lab., LLC*, 284 F. App'x 247, 255 (6th Cir. 2008) (affirming summary judgment where the plaintiff "provided no information" about his proffered comparator "that would indicate whether [they] were similarly situated in all relevant aspects of their employment").

### b.  *Non-Protected*

Grant also fails to present any evidence that her proffered comparators were non-Black or non-disabled. As to race, Grant offers only her own speculation that she was "the only Black nurse on Team 5." (Doc. No. 29-1, at 5, 12, 17 (citing Doc. No. 29-2, at 17, 23, 28).) From this, Grant implausibly assumes that everyone else on Team Five is "White." (*Id.* at 6, 12, 13, 14, 17.) This assumption rings particularly hollow given Grant's prior deposition testimony that she "cannot recollect" and "couldn't speak to" the races of any individuals on Team Five during the relevant time-period. (Doc. No. 27-3, at 17:18–25.) Later, Grant testified that she "believe[s]" McCallister, Lloyd, Sutter, Hale, and Ross are White. (*Id.* at 78:3–5.) But "without substantiating facts," Grant's "mere 'belief' or 'understanding' . . . cannot establish the truth of the matter asserted." *Giles*, 241 F.R.D. at 470 (citation omitted). "It is now quite well-established that, in order to withstand a motion for summary judgment, the party opposing the motion must present affirmative evidence to support his/her position; a mere scintilla of evidence is insufficient." *Mitchell*, 964 F.2d at 584 (citations and quotation marks omitted). Grant fails to present even a scintilla of evidence to support her subjective beliefs regarding her co-workers' races, and thus fails to satisfy her burden. *Id.*; *see also Smith v. P.A.M. Transp., Inc.*, No. 3:21-cv-262, 2024 WL 2097102, at *22 (M.D. Tenn. May 9, 2024) (granting summary judgment where the plaintiff did not "provide a basis to

19

show that he has personal knowledge that the purported comparators are not African American");
*Chaudhery v. Hamtramck Pub. Schs.*, No. 08-10601, 2008 WL 5351037, at *11 (E.D. Mich. Dec. 19, 2008) (granting summary judgment where the plaintiff "submitted no evidence to establish, among other things," his proffered comparator's race).

Nor has Grant presented evidence that her proffered comparators were non-disabled. Grant was unable at her deposition to recall the "disability status of any of the individuals that were on team five between 2018 and 2020" (Doc. No. 27-3, at 18:17–21), and she submits no evidence on the topic. Grant dismisses this lack of evidence as "irrelevant," confusingly arguing that the VA "failed to discharge its initial burden on this matter, so no response is necessary." (Doc. No. 29-1, at 12 (citing *Celotex*, 477 U.S. at 328 (White, J., concurring)).) Grant's argument here is particularly hard to follow, but it "is well-established that the burden is on an employment discrimination plaintiff to establish a *prima facie* case of discrimination." *Mitchell*, 964 F.2d at 582 (citations omitted). Thus, a defendant may discharge its burden on summary judgment by "'pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case.'" *Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 471 (6th Cir. 2014) (quoting *Celotex*, 477 U.S. at 325). The VA did so here, and Grant failed to carry her burden on rebuttal to "'designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324).

### c. More Favorable Treatment

Finally, Grant has not presented a triable issue of fact as to whether her proffered comparators were treated more favorably than her. Grant represents that she "identified White nurses—Ms. Ross, Ms. Lloyd, and Ms. Sutter—on the same Team 5 under the same supervisory chain, who received holiday or block leave that Grant had requested first or simultaneously." (Doc.

20

No. 29-1, at 12 (citing Doc. No. 29-2, at 11–12, 44).) But, to put it mildly, Grant's record citation does not establish what she says it does. Nor does any of Grant's evidence, which, again, consists solely of her pre-suit declaration. Grant has no personal knowledge or documentary evidence of the essential facts about her proffered comparators or their leave requests, and her "'conclusory and unsupported allegations, rooted in speculation,' are insufficient to create a genuine dispute of material fact for trial." *Gunn v. Senior Servs. N. Ky.*, 632 F. App'x 839, 847 (6th Cir. 2015) (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003)).

Furthermore, even if her speculation were admissible evidence, it would still amount "to a comparison of apples and oranges" because there is no evidence about the circumstances of the other nurses' leave requests. *Eddington v. Wal-Mart Stores E., L.P.*, No. 13-cv-11947, 2014 WL 3519206, at *10 (E.D. Mich. July 16, 2014). For example, Grant points to no admissible evidence that her proffered comparators requested and received days off when three or more other Team Five nurses also requested that day off, or that her comparators received major holidays off multiple years in a row to the exclusion of their colleagues. Absent this context, a jury could not reasonably find that Grant's proffered comparators requested and received time off "'without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Hughes v. Gen. Motors Corp.*, 212 F. App'x 497, 503 (6th Cir. 2007) (quoting *Mitchell*, 964 F.2d at 583); *see also Jones*, 488 F.3d at 405 (same).

In sum, Grant has not presented a triable issue of fact as to whether similarly situated non-protected employees were treated more favorably than her. Grant therefore fails to satisfy this element of her *prima facie* discrimination case, providing a separate basis for summary judgment on those claims. *See, e.g.*, *McNeil v. Sonoco Prods. Co.*, 519 F. App'x 382, 383 (6th Cir. 2013) (affirming summary judgment where the plaintiff "failed to proffer any evidence that a similarly

situated employee outside of his protected class was treated more favorably and instead relied—impermissibly—on argument and the allegations in his complaint"); *Reynolds v. FCA US LLC*, No. 3:20-cv-12, 2021 WL 3737955, at *5 (N.D. Ohio Aug. 24, 2021) (granting summary judgment where "the Court is left to wonder how the named individuals were similarly-situated in *any* respect to Plaintiff," and reiterating that "conclusory allegations . . . are insufficient to establish a *prima facie* case and survive summary judgment" (emphasis in original)).

> 3. *Pretext*

Because Grant failed to carry her initial burden of establishing at least two elements of her *prima facie* case, the Court is not required to consider the remaining steps of the *McDonnell Douglas* framework. *See, e.g.*, *Kellogg*, 674 F. App'x at 501; *Williams*, 2024 WL 3427171, at *4. Nevertheless, even if Grant did establish a *prima facie* case, which she has failed to do, summary judgment would still be proper. The VA has presented legitimate, non-discriminatory reasons for each of the employment actions at issue. (*See* Doc. No. 27-1, at 19–22 (explaining).) Those reasons, "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause" of any of the various employment actions about which Grant complains. *Wright*, 455 F.3d at 707 (citation and quotation marks omitted). Accordingly, Grant must present evidence sufficient to establish that the VA's reasons were mere pretext for discrimination. *Id.*

The Sixth Circuit provides that a plaintiff may establish that the employer's proffered reasons were mere pretext by showing: (1) the stated reasons had no basis in fact; (2) the stated reasons did not actually motivate the employer's actions; or (3) the stated reasons were insufficient to motivate the employer's actions. *McLaughlin v. Fifth Third Bank, Inc.*, 772 F. App'x 300, 302 (6th Cir. 2019) (citing *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2012)). Whichever method a plaintiff employs, she "'always bears the burden of producing sufficient evidence from

which the jury could reasonably reject [the defendant's] explanation and infer that the defendant . . . intentionally discriminated against [her].'" *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (quoting *Clark v. Walgreen Co.*, 424 F. App'x 467, 473 (6th Cir.2011) (per curiam)).

Grant has not presented a triable issue of fact as to whether the VA's proffered reasons for its decisions were mere pretext for discrimination. Although Grant attempts to raise various issues of fact, none are supported by admissible evidence. For example, regarding her leave requests, Grant contends that "[m]anagement did not comply with the Master Agreement Article 35, Subsection 5, Subsection C" when denying her leave requests. (Doc. No. 29-2, at 17; *see also* Doc. No. 29-1, at 6 (vaguely referencing "inconsistent rotation policies").) Grant does not, however, provide a copy of the "Master Agreement" for the Court to consider. Similarly, Grant repeatedly asserts that "there is another RUR Nurse Angela Lloyd who has received holidays off that she has had the previous year per the RUR SharePoint Calendar." (Doc. No. 29-2, at 7–8; *see also, e.g.*, *id.* at 10 ("I have noticed a pattern on the RUR SharePoint Leave Calendar that . . . Angela Lloyd . . . has a history of being approved for recurrent holidays off.").) But again, there is no evidence of any time-off requests by Lloyd, and Grant's pre-suit speculation about another employee's leave does not create a genuine issue of fact. *Viet*, 951 F.3d at 823. Same goes for numerous other issues cursorily raised by Grant, such as the timing of other nurses' time-off requests (Doc. No. 29-1, at 6 (citing Doc. No. 29-2, at 19)), their seniority as compared to Grant (*id.* at 13 (citing Doc. No. 29-2, at 20–21)), and whether more than three Team Five nurses were ever approved for time off on the same day. (Doc. No. 29-2, at 44.)

And as to the non-leave-related actions, Grant simply points to her own unsupported speculation that the VA's proffered reasons were "mere cover" for discrimination and insists that

23

a jury could conclude the same. (Doc. No. 29-1, at 14–15 (posturing that "a jury could find [various unproven facts] suspicious").) Grant asserts, without legal or evidentiary support, that "a jury could reasonably reject the VA's claims that 'staffing,' 'computer issues,' 'lack of subject matter expert not necessary,' and 'routine QA process' fully explain the repeated disadvantageous treatment Grant received, without the taint of discrimination." (Doc. No. 29-1, at 15.) That is not enough. "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Brennan Tractor Supply Co.*, 237 F. App'x 9, 19–20 (6th Cir.2007). It is "well-settled that a court may not reject an employer's explanation [of its actions] unless there is sufficient basis in the evidence for doing so." *Id.* at 20 (cleaned up).

In sum, there is no evidence before the Court from which a reasonable jury could reject the VA's stated reasons and find for Grant. Thus, even if the Court was required to perform this pretext analysis (which it is not, because Grant has failed to establish a *prima facie* case), Grant cannot prevail on her discrimination claims.

### B.    Hostile Work Environment

Grant's hostile work environment claims also lack merit. As with her discrimination claims, Grant raises one hostile work environment claim under Title VII on account of her race, and another under the Rehabilitation Act on account of her disabilities.

To prevail on these claims, Grant must establish that (1) she was a member of a protected class and/or disabled, (2) she was subject to unwelcome harassment, (3) the harassment was based on her race and/or disabilities, (4) the harassment unreasonably interfered with her work performance, and (5) the VA either knew or should have known about the harassment and failed to take corrective measures. *Plautz v. Potter*, 156 F. App'x 812, 818 (6th Cir. 2005) (stating elements under the Rehabilitation Act); *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir.

2011) (stating elements under Title VII). A hostile work environment is present when the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (cleaned up). This analysis is both subjective and objective: the conduct must be objectively hostile, meaning "an environment that a reasonable person would find hostile or abusive," and the victim must "subjectively perceive" it that way. *Williams*, 187 F.3d at 566 (quoting *Harris*, 510 U.S. at 21–22).

The VA does not dispute that Grant is Black and disabled, but it contends that the alleged harassment was not "severe or pervasive," and that there is no evidence, and therefore no triable issue of fact, that any of the alleged harassment occurred because of Grant's race or disabilities. (Doc. No. 27-1, at 25–26.) The Court agrees on both points.

### 1. Severe or Pervasive

Determining whether alleged harassment was severe and pervasive requires considering the totality of the circumstances. That is because "even where individual instances of [ ] harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a Title VII violation." *Williams*, 187 F.3d at 563. The circumstances to be considered "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. But it is well-established that "'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to' a hostile work environment." *Rayford v. Ill. Cent. R.R.*, 489 F. App'x 1, 4–5 (6th Cir. 2012) (alteration omitted) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct.

2275, 141 L. Ed. 2d 662 (1998)). This standard is strict enough to "ensure that Title VII does not become a 'general civility code.'" *Faragher*, 524 U.S. at 788 (quoting *Oncale*, 523 U.S. at 80).

Grant premises her hostile work environment claims on the same conduct as her discrimination claims (but including the leave denials for July 4 and December 31, 2018). (*See* Doc. No. 1 ¶¶ 27–38, 53–64.) Even drawing all reasonable inferences in Grant's favor and viewing her allegations together, the VA's conduct at issue cannot be reasonably construed as creating an environment "permeated with discriminatory intimidation, ridicule, and insult." *Harris*, 510 U.S. at 21 (citation and quotation marks omitted). "There is no evidence that [Grant] was ridiculed or insulted because of [her race or] medical condition[s] to the point that it permeated [her] work environment." *Plautz*, 156 F. App'x at 819. In fact, there is no evidence that Grant was intimidated, ridiculed, or insulted at all, or that Grant's supervisors or coworkers ever referenced Grant's disabilities or race. Grant "was never disciplined, nor did [she] receive negative performance reviews." *Snyder v. Pierre's French Ice Cream Co.*, 589 F. App'x 767, 773 (6th Cir. 2014). And while "Title VII bars conduct that would seriously affect a reasonable person's psychological well-being," *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993), Grant does not produce any evidence that could satisfy that standard, even when the VA's conduct is viewed cumulatively. *Cf. McNeal*, 117 F.4th at 905 (crediting the plaintiff's evidence that his employer's conduct "forc[ed] him to seek out medical treatment and begin taking prescription anxiety medication for the first time").

Accordingly, on the record before the Court, no reasonable jury could find that Grant suffered from an objectively hostile work environment. Thus, the VA is entitled to summary judgment on those claims as well. *Id.*; *see also Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 836 (6th Cir. 1996) (affirming summary judgment where the plaintiff did not produce "any evidence

tending to show that the harassment interfered with her work performance and/or created an objectively intimidating, hostile, or offensive work environment, within the meaning of *Harris*").

### 2. *Causation*

Even if the VA's conduct was sufficiently "severe or pervasive," summary judgment is appropriate because Grant "has adduced absolutely no evidence to indicate that any of the allegedly hostile or harassing actions were in any way" connected to Grant's race or disabilities. *Russell v. Univ. of Toledo*, 537 F.3d 596, 608 (6th Cir. 2008). Grant contends otherwise, citing the following as evidence "linking the hostile conduct to" her race and disabilities: "Race: She was the only Black nurse on Team 5, while similarly situated White nurses did not face the same repeated leave issues or telework refusals. [citing Doc. No. 29-2, at 1, 10–11.] Disability: The delayed medical paperwork and telework, combined with leadership's remarks or indifference, suggests animus or at least disinterest in her disability needs." (Doc. No. 29-1, at 17.)

But again, Grant submits no admissible evidence to support those characterizations, and conclusory allegations are not enough to survive summary judgment. *See Viet*, 951 F.3d at 823; *Haywood v. DeJoy*, No. 21-6030, 2022 WL 16647967, at *4 (6th Cir. Oct. 6, 2022) (affirming summary judgment where the plaintiff "alleged no facts connecting her [protected status] to the alleged harassment she faced, which is fatal to her claim." (citation omitted)). Grant's "failure to provide 'any persuasive proof beyond mere speculation of a causal connection between protected activities and work atmosphere' justifies summary judgment dismissal" of her hostile work environment claim. *Bryant v. McDonough*, No. 1:22-cv-207, 2024 WL 1075431, at *18 (N.D. Ohio Mar. 12, 2024) (alterations omitted) (quoting *Khamati v. Sec'y of Dep't of the Treasury*, 557 F. App'x 434, 444 (6th Cir. 2014)); *Stafford*, 2025 WL 496466, at *14.

Accordingly, Grant fails to raise a triable issue of fact regarding at least two elements of her hostile work environment claims. The VA is thus entitled to summary judgment on those claims as well.

### C.    Retaliation

Lastly, Grant asserts retaliation claims under Title VII and the Rehabilitation Act, both of which are premised on the same conduct as her discrimination claims. (Doc. No. 1 ¶¶ 39–51.) It is unclear whether Grant is asserting a retaliatory hostile work environment claim or a traditional retaliation claim, or both. The Court will therefore address each in turn. Both are subject to the *McDonnell Douglas* burden-shifting scheme. *See Khamati*, 557 F. App'x at 442.

### 1.    Retaliatory Hostile Work Environment

To establish a *prima facie* case of retaliatory hostile work environment, Grant must demonstrate the following: 1) she engaged in a protected activity; 2) the VA knew this; 3) the VA subjected Grant to severe or pervasive retaliatory harassment; and 4) the protected activity is causally connected to the harassment. *See Dean-Lis*, 598 F. App'x at 415 (Title VII); *Willey v. Slater*, 20 F. App'x 404, 406 (6th Cir. 2001) (Rehabilitation Act).

Grant fails on the third and fourth prongs. As to the third, the Court has already explained that Grant has not presented evidence from which a jury could reasonably find that Grant's workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Khamati*, 557 F. App'x at 443 (cleaned up).

As to the fourth, Grant does not point to any evidence connecting her protected activity to the alleged harassment. Grant's entire argument to the contrary is as follows: "Prior EEO: Grant had filed a formal EEO claim against a former manager; after that, her previously cooperative

28

management abruptly became obstructionist, suggesting retaliation." (Doc. No. 29-1, at 17 (citing Doc. No. 29-2, at 2–3).) But the cited pages of Grant's pre-suit declaration merely confirm the undisputed facts that Grant "filed a formal EEO complaint against [her former manager] on or around March of 2018," and that the complaint was ultimately "dismissed." (Doc. No. 29-2, at 3.) Thus, Grant is left only with her subjective belief that the VA's conduct was in any way retaliatory, but a plaintiff's "'[s]ubjective beliefs, without affirmative evidence, are insufficient to establish a claim of retaliation.'" *Johnson v. Cargill, Inc.*, 932 F. Supp. 2d 872, 892 (W.D. Tenn. 2013) (quoting *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 491 (6th Cir. 2006)); *see also Dean-Lis*, 598 F. App'x at 415 (finding the plaintiff's subjective beliefs about supervisor's actions could not establish causation); *Alexander v. Ohio State Univ. Coll. of Soc. Work*, 697 F. Supp. 2d 831, 851 (S.D. Ohio 2010) ("A plaintiff's subjective beliefs or impressions are insufficient to create an inference of retaliation."); *Khamati*, 557 F. App'x at 444 ("Perhaps most condemning, then, is that [the plaintiff] has failed to provide any proof beyond bare assertions of a causal connection between her [protected status or activities] and her work atmosphere[.]").

And even if Grant's assertion that "her previously cooperative management abruptly becom[ing] obstructionist" (Doc. No. 29-1, at 17) was supported by the record (it is not), "[t]emporal proximity alone generally is not sufficient to establish causation." *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448–49 (6th Cir. 2020) (citations omitted). "Exceptions to this rule are 'rare,' even in instances involving relatively short time periods." *Id.* (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (holding that causation was established by temporal proximity where, among other things, the employee was fired the same day his employer learned of his protected activity)). Grant's allegations do not qualify for this rare exception. Her most recent EEO complaint was filed in March 2018 (Doc. No. 29-2, at 3), yet the first documented

instance of allegedly retaliatory harassment (the denial of leave for December 31, 2018) did not

occur until eight months later, and most of the VA's challenged conduct occurred in October 2019

or later. (Doc. No. 1 ¶¶ 40–45; Doc. No. 29-1, at 6–7.) The VA is therefore entitled to summary

judgment on any retaliatory hostile work environment claim. *Kenney*, 965 F.3d at 449.

### 2.     *Traditional Retaliation*

Finally, to the extent Grant asserts a traditional retaliation claim, that claim fails as well.

To carry her initial burden of establishing a *prima facie* case of retaliation claim under Title VII

or the Rehabilitation Act, Grant must show that (1) she engaged in protected activity, (2) the VA

knew that she engaged in this protected activity, (3) the VA then took an employment action

adverse to her, and (4) a causal connection between the protected activity and the adverse

employment action exists. *Khamati*, 557 F. App'x at 441.

There are two differences between the retaliation and discrimination standards under Title

VII, but neither affects the outcome here. First, an adverse action for purposes of a retaliation claim

is one that would "dissuade a reasonable worker from making or supporting a charge of

discrimination." *Muldrow*, 601 U.S. at 357 (cleaned up); *see also Hawkins v. Anheuser-Busch,

Inc.*, 517 F.3d 321, 345 (6th Cir. 2008) (same). The Supreme Court has made clear that "it is

important to separate significant from trivial harms," and that "petty slights, minor annoyances,

and simple lack of good manners" are generally insufficient. *Burlington N. & Santa Fe Ry. Co. v.

White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (citation omitted). The conduct

Grant complains of, even when viewed collectively and in the light most favorable to Grant, are at

most "trivial harms"; they cannot reasonably be construed to rise to the level of seriousness that

would dissuade a reasonable employee from reporting perceived discrimination. *See, e.g., Arnold

v. City of Columbus*, 515 F. App'x 524, 537 (6th Cir. 2013) (affirming summary judgment where

"the incidents to which [the plaintiffs] refer were not severe or pervasive"); *Jones v. Johanns*, 264 F. App'x 463, 469 (6th Cir. 2007) (similar).

Second, Title VII retaliation claims "require traditional but-for causation, wherein a plaintiff must show 'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct." *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 614 (6th Cir. 2019) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013) (further citation omitted)). Grant has presented no evidence from which a reasonable jury could conclude that the VA's conduct with which Grant takes issue would not have happened but-for her EEO activity. The VA is therefore entitled to summary judgment on any retaliation claim as well. *Khamati*, 557 F. App'x at 442.

## V.    CONCLUSION

For the reasons set forth above, the VA's motion for summary judgment is granted and this case is closed.

**IT IS SO ORDERED**.

Dated: April 18, 2025

_____
**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**